**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JUSTICE ONYEALISI IKE**, |
| Plaintiff, |
| v. |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**, *et al.*, |
| Defendants. |

Case No. 20-cv-1744 (CRC)

**<u>MEMORANDUM OPINION</u>**

Justice Ike applied for an immigrant visa to work in the United States on the ground that he was a highly skilled professional whose work would serve the national interest. United States Citizenship and Immigration Services ("USCIS") denied the application, and Mr. Ike challenged that denial by filing this action against USCIS and several federal officials (together, "the Government"). The Government now moves to transfer this case to the Northern District of Texas, where Ike's petition was processed, or alternatively to the District of Maryland, where Ike resides.

The Court agrees with the Government that Ike could have and should have filed his Complaint in the Northern District of Texas. The Court will, accordingly, grant the motion to transfer the case there.

**I.    Background**

The following facts are alleged in the Complaint or evident from exhibits in the record whose authenticity is not disputed. Ike is a citizen of Australia who currently resides in Maryland. Compl. 1; <u>id.</u> ¶ 1. According to Ike's representations to USCIS, he provides

consulting services in data science and related fields.  Notice of Intent to Deny ("NOID") 2, ECF No. 5-2.

Ike previously worked in the United States under a visa that has now expired.  He continues to work here pursuant to a temporary Employment Authorization Document.   Compl. ¶¶ 2, 5.

In March 2019, Ike filed an Immigrant Petition for Alien Workers (Form I-140) with USCIS.  Id. ¶ 3.  The petition sought a visa under Section 203(b)(2) of the Immigration and Nationality Act, which makes immigrant visas available to "qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States."  Id. ¶ 6; 8 U.S.C. § 1153(b)(2)(A).  Because Ike sought a visa independently and not in connection with a job offer from a U.S. employer, he was additionally required to show that granting him a visa would be "in the national interest."  Compl. ¶ 7; 8 U.S.C. § 1153(b)(2)(B)(i).

USCIS processed Ike's petition at its service center in Irving, Texas.  See Decision, ECF No. 5-2 (correspondence addressed from Texas Service Center); Compl. ¶ 22 (naming Director of the Texas Service Center as a defendant).  In April 2020, USCIS issued a request for evidence, to which Ike responded the following month.  Compl. ¶¶ 10-11.  USCIS denied Ike's petition in June 2020.  Id. ¶ 12.

Ike then filed the instant lawsuit, alleging that the denial of his petition violated the Administrative Procedure Act and the Fifth Amendment's guarantee of procedural due process. Id. 6-7.  The Complaint seeks an order requiring USCIS to approve the petition, among other relief.  Id. 9.

In August 2020, while this litigation was pending, USCIS informed Ike that it had decided on its own motion to "reopen the petition . . . and issue a Notice of Intent to Deny ["NOID"] in order to provide [Ike] the opportunity to rebut USCIS findings and present further evidence."  Decision, ECF No. 5-2.  USCIS then issued an NOID, stating that Ike "did not establish that [he] has satisfied each adjudicative element to establish eligibility for the requested benefit" but inviting him to submit additional evidence in support of his petition.  NOID 7.  As of mid-September 2020, the Government represented that Ike's reopened administrative case was still pending before USCIS.  Defs.' Mem. 2.

## II.    Legal Standards

A court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," as long as the transferee district is one where the case "might have been brought."  28 U.S.C. § 1404(a).  The moving party bears the burden to establish both (1) that the plaintiff *could* have brought the action in the proposed transferee court and (2) that the action *should* have been brought there.  See Gyau v. Sessions, No. 18-cv-0407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (citing Van Dusen v. Barrack, 376 U.S. 612, 616-43 (1964)); Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 55 (D.D.C. 2011).

An action against the federal government *could* be brought "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

The analysis of whether an action *should* be brought in a specific district "calls on district courts to weigh in the balance a number of case-specific factors that guide an inquiry into

whether transfer is in the public interest and in the private interest of the parties."  Pasem v. USCIS, No. 20-cv-344 (CRC), 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) (internal quotation marks omitted).  "The public interests include the transferee court's familiarity with the governing laws, each court's relative congestion, and the local interest in resolving the controversy."  Gyau, 2018 WL 4964502, at *1.  "The private interests include the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence."  Id.

### III.  Analysis

The Government seeks to transfer this case to the Northern District of Texas or, alternatively, to the District of Maryland.  The Court is persuaded that the Complaint could have and should have been filed in the Northern District of Texas.  Although the Court has some doubt as to its subject matter jurisdiction, it is appropriate to transfer the case and leave the jurisdictional question to the transferee court.

A.  This action could have been brought in the Northern District of Texas.

As an initial matter, venue would be proper if this action had been filed in the Northern District of Texas.  Ike's Form I-140 undisputedly was processed and denied at USCIS's Texas Service Center, located in the Northern District of Texas.  Therefore, at least "a substantial part of the events or omissions giving rise to the claim occurred" in that district.  28 U.S.C. § 1391(e)(1); see also Bourdon v. DHS, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (transferring case to district where USCIS field office denied petition and explaining that "a substantial part—if not all—of the events or omissions giving rise to Plaintiff's claims occurred there").

Ike argues that he could not have filed this action in the Northern District of Texas because "[t]he events that have occurred in the Northern District of Texas are a mere byproduct

of the policy decisions made in the District of Columbia."  Opp. 5.  However, nothing in the

Complaint or in the record supports the conclusion that the Texas Service Center passively

transmitted a decision on Ike's application from D.C.  While the Texas Service Center was

doubtless implementing national policy, it did so by applying uniform criteria to the facts

presented by a specific petition pending in Texas.  See Decision (stating that Ike's petition was

denied "due to the petitioner's failure to establish eligibility for the benefit"); Compl. ¶ 14

(alleging that "USCIS made a cursory examination of the evidence submitted by the Plaintiff,

both in the initial application and in response to the request for evidence, and found that Plaintiff

had not satisfied" the eligibility criteria).  The actions taken by the Texas Service Center provide

an adequate basis for venue in the Northern District of Texas.

     B.  This action should have been brought in the Northern District of Texas.

     Next, the Court considers whether this case should be litigated in the Northern District of

Texas.  On the whole, both public and private interests support transfer to that district.

     Beginning with the public-interest factors, the Court finds that transfer to the Northern

District of Texas is in the public interest, primarily because the controversy in this case is local to

that district.  See Bourdon, 235 F. Supp. 3d at 308 (finding, in similar circumstances, that "[t]he

interest in deciding local controversies at home is the public interest factor of most importance in

this case").  Courts routinely recognize that cases challenging the denial of immigration-related

petitions should ordinarily be decided in the district where the petition was processed and denied.

For example, in Ngonga v. Sessions, a couple living in Virginia challenged the denial of a

Petition for Alien Relative (Form I-130) by a USCIS office located within the Eastern District of

Virginia.  318 F. Supp. 3d 270, 272-73, 275 (D.D.C. 2018).  Judge James E. Boasberg

transferred the case to the Eastern District of Virginia, noting that "[c]ontroversies should be

resolved in the locale where they arise" and that this "policy rationale . . . applies equally to the

judicial review of an administrative decision which will be limited to the administrative record."

Id. at 276 (quoting Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 19 (D.D.C. 1996));

see also Bourdon, 235 F. Supp. at 308 (finding that the case was "predominately a local

controversy that should be decided in the Southern District of Florida," where the plaintiff's

petition was denied); McAfee, LLC v. USCIS, No. 19-cv-2981 (DLF), 2019 WL 6051559, at *1

(D.D.C. Nov. 15, 2019) (similar); Gyau, 2018 WL 4964502, at *2 (similar).

Ike counters that "[a] claim focusing on directives coming from USCIS headquarters is a

controversy local to the District of Columbia" and should be decided here in the public interest.

Opp. 10 (citing Ravulapalli, 773 F. Supp. 2d at 56). But Ike's claim does not, in fact, focus on

directives issued by USCIS officials in D.C. According to the Complaint, "[t]he grounds for

denying Plaintiff's application was the alleged failure to meet the applicable standard." Compl. ¶

48. Ike challenges the agency's determination that he did not meet that standard, id. ¶ 35, but he

does not challenge the standard itself. Nor does the Complaint refer to any specific USCIS

policy or directive that might have caused the Texas Service Center to deny Ike's petition. This

case thus differs from the cases Ike cites, where national policy directives were central to the

plaintiffs' claims. See Ravulapalli, 773 F. Supp. 2d at 56 (denying transfer where "Plaintiffs'

claims focus primarily on the policies issued from USCIS headquarters that apply to all USCIS

field offices"); Salha v. DHS, No. 20-cv-1102 (KBJ), 2020 WL 5505350, at *2 (D.D.C. Sept. 11,

2020) (plaintiff challenged "policy decisions that were designed and shaped by officials at

agencies in Washington, D.C. and that have allegedly caused a substantial delay in processing

his visa application").

The remaining public-interest factors require less discussion.  The proposed transferee court's familiarity with the governing laws is neutral because "federal district courts are 'equally familiar' with federal law."  Pasem, 2020 WL 2514749, at *3 (quoting Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 20 (D.D.C. 2008)).  That principle applies even to federal administrative law cases, despite the relative concentration of such cases in this district.  See id.; Opp. 9 (noting "the significant number of United States civil cases" in this district).

The relative congestion between districts weighs against transfer, but only marginally. Recent statistics show that, by most relevant metrics, the Northern District of Texas is more congested than this district.  Most significantly, as of September 2020 the median time from filing to disposition for civil cases in the Northern District of Texas was 13.3 months, compared to 5.8 months in this district.  See United States District Courts – National Judicial Caseload Profile.[1]  On the other hand, for civil cases that go to trial, pretrial proceedings generally take significantly longer in this district than in the Northern District of Texas.  Id.  In any event, the Northern District of Texas does not have "such enormous backlogs and congestion that transfer would not be in the public interest," considering the strong countervailing interest in having controversies decided locally.  Pasem, 2020 WL 2514749, at *3.

Having found that transfer is in the public interest, the Court now turns to the relevant private-interest factors: "the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence."  Gyau, 2018 WL 4964502, at *1.  The latter three of these four factors favor transfer to the Northern

---

[1] Available at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf  (last accessed Dec. 15, 2020).

District of Texas.  The Government prefers to litigate in that forum, and the claim arose there because Ike's petition was processed and denied at the Texas Service Center.  See Ngonga, 318 F. Supp. 3d at 275-76 (claim arose in the district where the relevant USCIS field office was located).  The convenience factor also tends to favor the Northern District of Texas.  No party argues that it would be inconvenienced by litigating there, and to the extent that resolving this case might require any witness testimony or documentary evidence, those witnesses and documents are most likely to reside in Texas.

As Ike points out, courts normally "afford substantial deference to the plaintiffs' choice of forum."  Opp. 6 (quoting Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)).  However, this deference is reduced when the plaintiff seeks to litigate outside his home district and the factual allegations lack a "significant nexus" to the plaintiff's preferred forum.  Salha, 2020 WL 5505350, at *2; see also Pasem, 2020 WL 2514749, at *4.  Ike does not live in D.C., and as already discussed, the Complaint does not plead a strong factual link between the denial of Ike's petition and any particular act by D.C.-based officials.  Ike's preference to litigate in this district therefore receives only minimal weight.

On balance, the private-interest factors favor transfer to the Northern District of Texas, as do the public-interest factors.  The Court therefore concludes that Ike should have filed the Complaint in that district.

C.   The Court need not resolve its subject matter jurisdiction prior to transfer.

Finally, the Court finds that it is appropriate to transfer this case without fully analyzing and resolving the Court's subject matter jurisdiction over the action.

Although a federal court must confirm its jurisdiction before ruling on the merits of a case, "certain non-merits, nonjurisdictional issues may be addressed preliminarily."  Pub. Citizen

v. U.S. Dist. Court for D.C., 486 F.3d 1342, 1348 (D.C. Cir. 2007).  Accordingly, courts in this

district sometimes rule on motions to transfer venue without deciding their own subject matter

jurisdiction.  See Pac. Mar. Ass'n v. NLRB, 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012) (collecting

cases).  In deciding whether to address venue before jurisdiction in a specific case, courts

"consider which course would best serve the interests of judicial efficiency."  Id. at 59.

　　　　Here, no party has moved to dismiss on jurisdictional grounds, but the Court has some

doubt as to its subject matter jurisdiction.  After this lawsuit was filed, USCIS issued an NOID as

to Ike's visa petition, ordered "that Form I-140 be reopened and the original decision

withdrawn," and gave Ike 30 days to submit additional evidence before a "final decision" would

be made.  Decision.  According to the most recent information before the Court, Ike's

administrative case before USCIS is still pending.

　　　　In similar circumstances, some courts have found that they lost subject matter jurisdiction

when the agency reopened the administrative case.  See, e.g., Diaz v. Sessions, No. 17 Civ. 4148,

2019 WL 952307, at *2 (S.D.N.Y. Feb. 27, 2019); Fine Cuts, Inc. v. DHS, No. 10-cv-22, 2010

WL 11712783, at *1-*2 (N.D. Ill. Aug. 26, 2010).  However, at least one court has asserted

jurisdiction over a case that was facially in a similar posture to this one.  See RELX, Inc. v.

Baran, 397 F. Supp. 3d 41, 49-50, 53 (D.D.C. 2019) (concluding that the agency had "reopened

the case in name only" and dismissal was not warranted on ripeness or other grounds).

　　　　It thus appears that there is an arguable question as to the Court's subject matter

jurisdiction over Ike's claims.  No party has requested that the Court resolve its jurisdiction

before addressing venue, and the Court does not have the benefit of briefing on this issue.

Therefore, it is consistent with "the interests of judicial efficiency" to transfer this case without

ruling on subject matter jurisdiction.  Pac. Mar. Ass'n, 905 F. Supp. 2d at 59.  It will be up to the

transferee court to determine the jurisdictional effect, if any, of USCIS's decision to reopen the administrative case.

## IV.   Conclusion

For the foregoing reasons, the Court will grant defendants' Motion to Transfer Case and transfer this case to the Northern District of Texas.  A separate order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>December 15, 2020</u>